UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ELVIN LEBRON,

                                                    Plaintiff,

                -v.-

                                                                            9:08-CV-508
LT. D. ARMITAGE, et al.,                                    (TJM/GJD)

                                                    Defendants.
_____


ELVIN LEBRON
95-A-0121
Plaintiff, *pro se*

BRIAN J. O'DONNELL, Asst. Attorney General
Attorney for defendants

THOMAS J. McAVOY, Senior United States District Judge

## MEMORANDUM DECISION and ORDER

In this very lengthy civil rights complaint and amended complaint, plaintiff alleges that

defendants violated plaintiff's rights under the First, Eighth, and Fourteenth Amendments relative to

approximately ten misbehavior reports and disciplinary hearings between 2005 and 2008. (Dkt. Nos.

1, 58).  Presently before the court[1] are three motions to dismiss filed on behalf of defendants pursuant

to FED. R. CIV. P. 12(b)(6).[2] (Dkt. Nos. 55, 57, 70).  Plaintiff has filed a response in opposition to the

motions, and defendants have filed a reply. (Dkt. Nos. 64, 65).

For the following reasons, this court will deny defendants' motions to dismiss without

prejudice, but will dismiss plaintiff's amended complaint in part and allow a portion of the amended

complaint to go forward.

---

[1] The parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been rescinded for purposes of these motions, and as such, any appeal taken from this order, if appropriate, will be to the Court of Appeals for the Second Circuit.

[2] The first motion to dismiss was filed on November 12, 2008 on behalf of all but two defendants. (Dkt. No. 55).  On November 25, 2008, defendant D. Bushey joined in the motion to dismiss, and on May 26, 2009, defendant R.J. Minogue joined in the motion to dismiss. (Dkt. No. 70).

**DISCUSSION**

1.      <u>Amendment as of Right</u>

Defendants filed their first motion to dismiss on November 12, 2008. (Dkt. No. 55).  Plaintiff

filed his amended complaint on November 20, 2008. (Dkt. No. 58).  Pursuant to FED. R. CIV. P.

15(a)(1)(A), a party may amend its pleading once as a matter of right before being served with a

"responsive pleading."  It is well-settled that a motion to dismiss is not a "responsive pleading" for

purposes of Rule 15. *Kassner v. 2ⁿᵈ Ave. Delicatessen, Inc.*, 496 F.3d 229, 242 (2d Cir. 2007); *Farid*

*v. Bouey*, 554 F. Supp. 2d 301, 308 n.3 (N.D.N.Y. 2008)(citing *Barbara v. New York Stock Exchange,*

*Inc.*, 99 F.3d 49, 56 (2d Cir. 1996)).  The amendment will be allowed under the Rules, even if it is

futile,[3] because leave of court is not required in the absence of a responsive pleading. *Farid*, 554 F.

Supp. 2d at 308 (citing *Rose v. Associated Universities, Inc.*, No. 00-CV-460, 2000 U.S. Dist. LEXIS

14242, 2000 WL 1457115, *3 (S.D.N.Y. Sept. 28, 2000)).  Thus, in this case, plaintiff was entitled to

file his amended complaint, and the amended complaint becomes the operative pleading.

2.      <u>Motion to Dismiss/Sufficiency of Amended Complaint</u>

Defendants moved to dismiss the original complaint. (Dkt. Nos. 55, 57, 70).  After plaintiff

filed the amended complaint, he also filed a response to defendants' motion to dismiss. (Dkt. No. 64).

Defendants filed a reply. (Dkt. No. 65).  In defendants' reply, they argued that plaintiff's response to

defendants' motion to dismiss was based upon claims appearing only in the amended complaint, and

thus, the court should not consider plaintiff's response. *Id.*  Defendants did not address the fact that

plaintiff was entitled to file the amended complaint.[4]

---

[3] Futility is a basis for the denial of a motion to amend.  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993)(citations omitted).

[4] A review of defendants' letter-motion dated June 2, 2009 shows that defendants may have misunderstood this court's order of December 1, 2008. *See* Dkt. Nos. 60 & 71.  In defendants' June 2, 2009 letter-motion, they

Because the amended complaint is now the operative pleading, the court can no longer

address defendants' motion to dismiss the ***original*** pleading.  Generally, if a plaintiff files an

amended complaint after a motion to dismiss has been filed, the court may deny the motion to dismiss

as moot and allow the defendants to amend and re-file their motion if appropriate to address the

amended pleading. *See e.g. W.B. David & Co. v. De Beers Centenary AG*, 04 Civ. 5203, 2005 U.S.

Dist. LEXIS 40103 (S.D.N.Y. Sept. 15, 2005).  However, because plaintiff is proceeding *in forma*

*pauperis*, the court must also consider the sufficiency of the allegations set forth in the amended

complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case ***at any***

***time*** if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on

which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from

such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court considers whether the complaint lacks

an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Dismissal of

frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste

of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir.

---

sought "clarification" regarding whether to answer the amended complaint, additionally, stating that "no ruling has
been issued changing the Court's December 1, 2008, ruling which appeared to deny as moot plaintiff's request to
'accept' the proposed Amended Complaint for filing." (Dkt. No. 71 at 2).  On June 18, 2009, Magistrate Judge Di
Bianco ordered that no response to the amended complaint was necessary "at this time." (Dkt. No. 74).

The issue is the potential misinterpretation of this court granting plaintiff an extension of time to respond to
the motion to dismiss, but denying the "remainder" of plaintiff's request as moot. (Dkt. No. 60).  Plaintiff's
November 26th motion was filed immediately after defendants' filed their first motion to dismiss, which was filed
after plaintiff filed his amended complaint. (Dkt. Nos. 58, 59).  Plaintiff's November 26th motion asked for an
extension of time to file his response to defendants' motion to dismiss and added the request that "if" the "amended
complaint is not processed for whatever reason," he wished to add the 101 missing "sentences" that he omitted from
the original complaint. (Dkt. No. 59).

This court denied plaintiff's prior motion as "moot" because the amended complaint was filed "as of right,"
and he did not need to ask the court to "accept" his complaint.  Thus, this does not change the fact that the amended
complaint is now the operative pleading.  Judge Di Bianco told defendants that they did not have to answer the
amended complaint because, before the court ordered the complaint served on the new defendants, it would review
the complaint for sufficiency as it has done herein

1974).  In order to state a claim upon which relief can be granted, the plaintiff must provide "the

grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief

above the speculative level.'" *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008)(quoting

*inter alia ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). *See Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must contain sufficient factual

matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct.

1937, 1949 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570).  This is the same standard as

if the court were reviewing the complaint after a motion to dismiss pursuant to FED. R. CIV. P.

12(b)(6).

      "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Ashcroft*, 129 S. Ct. at 1949.  Plaintiff's factual allegations must be

sufficient to give the defendant "fair notice of what the claim is and the grounds upon which it

rests.'"*Id.* (citing *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007)).

When reviewing the amended complaint under this standard, the court must accept as true all of the

factual allegations contained therein. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citations

omitted).  Finally, the court must heed its particular obligation to treat *pro se* pleadings with

liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150,

152 (2d Cir. 1999)(*per curiam*).  The court will, thus, review the amended complaint for sufficiency.

**3.**      **Facts and Procedural History**

      Plaintiff's original complaint is an incredibly lengthy document, and very difficult to read,

containing paragraphs numbered 1 through 331, with paragraph numbers 229 to 330 missing. (Dkt.

No. 1).  Plaintiff named twenty six defendants. *Id.* at 1.  The complaint is merely a litany of

conclusory statements about defendants' actions.  The amended complaint is equally as confusing and

as difficult to read as the original.  Unfortunately, plaintiff has also altered the list of defendants in the amended complaint, adding seven named defendants,  two "Jane Does," and one "John Doe."[5]  The body of the amended complaint names other individuals who do not appear in the caption, thus, the court must assume that these individuals are not intended to be defendants.

The amended complaint substantially repeats the claims listed in the original complaint and adds new claims that appear in paragraphs 220 through 329 of the amended complaint, with some alterations and additions to the paragraphs contained in the original complaint.  Plaintiff begins the amended complaint by stating that while he was incarcerated at Clinton Correctional Facility, defendants LaClaire[6] and Nye[7] harassed plaintiff because of a grievance he filed on April 14, 2005.  Amended Complaint (AC) ¶ 1[8].  Plaintiff states absolutely no basis for this conclusion, and then he states that defendants LaClaire and Nye told Officer Bassett[9] to harass plaintiff. *Id.* ¶ 2.  Plaintiff claims that on April 15, 2005, he complained to defendant Tedford about defendants LaClaire and Nye and Officer Bassett. *Id.* ¶ 3.  Plaintiff then states that "in retaliation," defendant Miller wrote a Tier II misbehavior report against plaintiff, alleging that plaintiff refused to leave his cell on April 21, 2005. *Id.* ¶ 4.

Plaintiff's amended complaint continues for 219 paragraphs, listing misbehavior reports,

---

[5] The "new" defendants have not been served.

[6] The court notes that this defendant LaClair is a different person than defendant LeClaire, who is a Deputy Commissioner. (Dkt. Nos. 16, 25)(acknowledgements of service). However, the court also notes that the caption of the amended complaint refers to this defendant as a Lieutenant, while the body of the complaint states that he is a Sergeant. AC ¶¶ 1-2.  Additionally, in the original complaint, plaintiff spells this defendant's name LaClair, while in the amended complaint, he spells it LaClaire. Compl. and AC ¶¶ 1-2.

[7] Nye is not named as a defendant in the captions of either the original or the amended complaints.

[8] The paragraph numbers describing the "facts" of this case begin at page three of the complaint.

[9] Officer Bassett is not named as a defendant in either complaint.

disciplinary hearings, and mentioning each time plaintiff filed a grievance or "complaint" regarding these allegedly false misbehavior reports or regarding improper actions taken at the subsequent disciplinary hearings.  In these paragraphs, plaintiff makes more conclusory statements about perceived problems, and sometimes states only that a defendant "declined to rectify the matter." *See e.g.* AC ¶¶ 24, 38, 41, 64.  In the new sections of plaintiff's amended complaint, he raises claims regarding the Time Allowance Committee (TAC) decision to withhold plaintiff's good time. AC ¶¶ 220-47.

Plaintiff lists a total of ten misbehavior reports written against him. AC  ¶¶ 4, 52, 69, 80, 112, 126, 154, 163, 178, 248.  All but one misbehavior report was of Tier II severity, and the Tier III misbehavior report is referenced only in the amended complaint. *Id.*  Each paragraph describing a particular misbehavior report begins with the words, "[i]n retaliation." *Id.*  Most of the paragraphs preceding the descriptions of the misbehavior reports discuss grievances filed by plaintiff.   Plaintiff generally received less than the maximum of 30 days confinement after his Tier II proceedings,[10] and on four occasions, he received substantially less than thirty days, and on two occasions, he did not receive any confinement as part of the disciplinary sanction. AC ¶¶ 27 (15 days); ¶ 58 (7 days);  ¶ 73 (4 days); ¶ 118 (21 days); ¶ 161 (no confinement); ¶ 169 (no confinement).

Plaintiff claims that on February 13, 2008, "in retaliation" apparently for a grievance against defendant Racette relating to the TAC proceedings, Officers Delisle, Moore and Sergeant Rendle[11] filed a misbehavior report against plaintiff in which plaintiff was accused of possessing a weapon. AC

---

[10] New York prison inmates are subject to three levels of disciplinary hearings for violations of prison rules. *Porter v. Coughlin*, 421 F.3d 141, 142 n.1 (2d Cir. 2005)(citing *inter alia* N.Y. COMP. CODES R. & REGS. tit. 7 §§ 270.2 (Standards of Inmate Behavior); 270.3 (Tiers of Disciplinary Hearings), 252.5 (Tier I dispositions); 253.7 (Tier II dispositions) and 254.7 (Tier III dispositions)).  An inmate may be subject to up to 30 days confinement in a Special Housing Unit or in his own cell (keeplock) for Tier II violations. *Id.* § 253.7(a)(1)(iii).

[11] None of these three individuals are named as defendants in the original or the amended complaint.

¶ 248.  The amended complaint contains a section challenging the Tier III disciplinary hearing held

against plaintiff for that charge. AC ¶¶ 248-330.[12]  Plaintiff alleges various deficiencies in the hearing.

AC ¶¶ 248, 251-52, 263-300.  The disciplinary hearing was conducted by proposed new defendant

Drown, who ultimately found plaintiff guilty of the misbehavior and sentenced him to twelve months

in the Special Housing Unit (SHU), together with a loss of privileges and a loss of twelve months of

good time. AC ¶ 300.  Many of the alleged deficiencies involve both Hearing Officer Drown and

Employee Assistant, proposed new defendant Declario.  Plaintiff claims that defendant Declario did

not properly investigate the case and did not properly assist plaintiff in obtaining witnesses and

marshaling the evidence. AC ¶¶ 266-67, 272.  Plaintiff states that the sentence was later reduced to

seven months of SHU, together with a loss of privileges and seven months loss of good time. AC

¶ 328.  Plaintiff specifically states that he is **not** challenging the loss of good time and **waives** any

such determination. AC ¶ 329.

## 4.      **Due Process**

In order to begin a due process analysis, the court must determine, *inter alia*, that plaintiff had

a protected liberty interest in remaining free from the confinement that he challenges. *Bedoya v.*

*Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996).  In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the

Supreme Court held that although states may still create liberty interests protected by due process,

"these interests will be generally limited to freedom from restraint which, while not exceeding the

sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its

own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the

---

[12] Within this section, plaintiff has inserted three paragraphs stating that proposed new defendant LaValley denied plaintiff's request for reconsideration of defendant Racette's TAC decision. AC ¶ 253, 255, 256.  The amended complaint is confusing because paragraph 254 complains about defendant LaValley referring plaintiff's complaint about the assistance he was being afforded in his disciplinary hearing to Hearing Officer Drown. AC ¶ 254.

ordinary incidents of prison life."  The Court in *Sandin* determined that the inmate's discipline in

segregated confinement for 30 days did not present the type of atypical, significant deprivation in

which the state might create a liberty interest.  *Id.*

### A.  Tier II Hearings

In this case, plaintiff's entire original complaint[13] and the first approximately 219 paragraphs

of his amended complaint challenge the alleged due process violations incurred at nine different Tier

II hearings.  Within these 219 paragraphs, plaintiff also mentions "grievances" and "complaints" that

he wrote regarding these misbehavior reports and disciplinary hearings.  To the extent that plaintiff

challenges the process that he received in relation to the Tier II disciplinary hearings, any such claims

must be dismissed pursuant to *Sandin*.  Plaintiff never received more than thirty days keeplock[14] and

loss of privileges for any of the disciplinary infractions that he committed.  This court also notes that

the separate misbehavior reports did not result in plaintiff serving an "aggregate" term of keeplock

that would approach a finding that the deprivation was "atypical" or "significant." *See Bunting v.*

*Nagy*, 452 F. Supp. 2d 447, 457 (S.D.N.Y. 2006)(heeding the Second Circuit's suggestion that

separate sentences should be considered in the aggregate for purposes of the *Sandin* inquiry when

they constitute a sustained period of confinement)(citing *inter alia Giano v. Selsky*, 238 F.3d 223, 226

(2d Cir. 2000)).

---

[13]  Plaintiff's original complaint had 230 operative paragraphs devoted to these nine disciplinary hearings.
The difference is immaterial for this decision.

[14]  "Keeplock" is a form of disciplinary confinement where the inmate is confined to his own cell for the
duration of the disciplinary sanction. *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989).   Since keeplock is
confinement to one's own cell, the deprivation imposed by such confinement is less than if one were confined to the
Special Housing Unit for the same period of time, making the deprivation in a keeplock situation less "atypical" or
"significant."

The court notes that plaintiff's opposition to defendants' motion to dismiss[15] states that he "corrected" his original complaint by adding the "missing" paragraphs to his amended complaint. (Dkt. No. 64 at 1). Plaintiff then argues that his claims challenging the disciplinary hearings rise to the level of constitutional claims because he received a sentence of 365 days in SHU after his Tier III hearing. *Id.* at 2. Plaintiff also states that he spent 362 days "confined" as a result of all the "retaliatory" reports, 177 days of which was in SHU. *Id.* Plaintiff appears to have aggregated all his disciplinary sentences in order to argue that he had liberty interest in remaining free from confinement. Plaintiff's argument does ***not*** save the claims regarding the Tier II violations discussed above, and the SHU confinement of 177[16] days was apparently the result of the February 2008 Tier III hearing.

First, plaintiff's addition is incorrect. According to his statement, if he spent 362 days in "confinement" with 177 days in SHU, he would have spent 185 days in keeplock. However, a review of the amended complaint shows that at most, plaintiff spent only 148 days total in keeplock as a result of the nine Tier II disciplinary hearings that he challenges.[17] Two of the misbehavior reports only resulted in loss of privileges. *See* AC ¶¶ 161, 169 (misbehavior reports nos. 7, 8). Of the 148 days of keeplock confinement, ***none*** of the time appears to have been consecutive, particularly the last two keeplock sentences which were in ***2007***. Thus, as stated above, plaintiff cannot aggregate the

---

[15] Although the court is denying defendants' motion to dismiss the original complaint as moot, the court will consider plaintiff's opposition to dismissal in an effort to give plaintiff every opportunity to argue that he states a claim.

[16] Although plaintiff initially received a 365 day sentence, he states that the sentence was reduced to seven months SHU, together with the loss of good time and privileges. AC ¶ 328.

[17] The sentences are as follows: 15 days on 4/27/05 (Compl. ¶¶ 22,27); 7 days in August of 2005 (plaintiff does not give a specific date for the hearing)(Compl. ¶ 58); 4 days in late October or early November of 2005 (Compl. ¶ 73); 30 days plus 11 days prehearing confinement in late November 2005 (Compl. ¶¶ 93, 93); 21 days in February of 2006 (Compl. ¶ 118); 30 days in July of *2007* (Compl. ¶ 134); and 30 days in November of 2007 (Compl. ¶ 183).

9

Tier II disciplinary sentences in an attempt to create a liberty interest from the duration of his keeplock sentences. All of his due process challenges to the Tier II disciplinary hearings must be dismissed.[18]

### B. Grievances or Complaints

Plaintiff also claims that he filed a variety of "grievances" or "complaints" without further explanation.[19] Plaintiff appears to have filed a grievance or complaint every time he was served with a misbehavior report and again immediately after he was found guilty at his Tier II hearings. Plaintiff claims that many of the "grievances" were not answered and many of them were simply denied. At times, plaintiff claims that defendants "refused to process" the grievances. *See e.g.* AC ¶¶ 103, 320 (alleging that Inmate Grievance Supervisor Brousseau refused to process plaintiff's grievance). Plaintiff also states in various paragraphs that supervisory officials "failed to rectify the problem."[20] Plaintiff's amended complaint is filled with conclusory statements that he filed grievances and complaints that defendants either denied, did not answer, or refused to "rectify."

The law is well-settled that inmates do not have a constitutional right to grievance procedures. *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003); *Davis v. Buffardi*, No. 0:01-CV-0285, 2005 U.S. Dist. LEXIS 45487, 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) (Magnuson, J.) ("[p]articipation in an inmate grievance process is not a constitutionally protected right")(citations

---

[18] Defendants also allege that plaintiff's challenge to his first 2005 misbehavior report is barred by the three year statute of limitations. Since the court is dismissing the claim on a substantive basis for failure to state a constitutional claim, the court need not address the statute of limitations issue.

[19] *See e.g.* AC ¶¶ 1, 3, 5, 6, 28, 33, 42, 47, 54, 70 (a complaint), 74 (two grievances), 81 (a grievance and a complaint), 95 (a grievance and a complaint), 98, 100, 105, 107, 113, 120, 124, 136 (complaint), 140, 142, 144, 148, 149, 150, 157, 171 (a grievance and a complaint), 176, 186, 189, 191 (a complaint), 192, 199, 211, 223, 236, 240, 246, 249 (a complaint).

[20] See e.g. AC ¶¶ 24, 38, 41 (referring to DA Richard Cantwell, who is not named as a defendant), 44, 92, 99, 101, 104, 138, 143, 147, 177, 190, 196, 205 (referring to Inmate Grievance Supervisor Bellamy), 207, 214, 235, 318, 319.

omitted).  Furthermore, a violation of the inmate grievance procedures does not give rise to claim

under section 1983. *Cancel v. Goord*, No. 00. CIV. 2042, 2001 U.S. Dist. LEXIS 3440, 2001 WL

303713, at *3 (S.D.N.Y. Mar. 29, 2001).

Thus, in this case, the fact that plaintiff filed "grievances" or wrote letters of "complaint," but

that they were denied or the grievance procedure was not properly followed does ***not*** rise to the level

of a constitutional claim.  Plaintiff never really states what he wrote in any of the grievances or

complaints.  It is often unclear what "problem" the defendant allegedly failed to "rectify" or how the

"problem" came before that defendant in the first place.  The court can only assume that plaintiff was

complaining generally about the defendants' conduct alleged in the preceding paragraphs of the

amended complaint.  In any event, the court would note that if plaintiff were attempting to challenge a

disciplinary hearing or disciplinary sanction by filing a grievance, the regulations specifically state

that disciplinary hearings are not "grievable." *See* N.Y. CODES R. & REGS. tit. 7, § 701.3(e)(2)(stating

that the individual decision or disposition resulting from a disciplinary hearing is not a "grievable"

issue).  Although this court does not make any such finding, it is possible that the reason that many of

plaintiff's "grievances" or "complaints" about his disciplinary proceedings were not "processed" or

were denied was simply because they were not grievable issues.  Thus, to the extent that plaintiff is

attempting to raise due process claims regarding the grievance process, these claims  may be

dismissed.

**B.  Tier III Hearing**

In his amended complaint, plaintiff includes one additional disciplinary hearing challenge.

Plaintiff states that on February 13, 2008, three officers, none of whom have been named as

defendants, issued a misbehavior report "in retaliation," charging plaintiff with possession of a

weapon. AC ¶ 248.  Plaintiff states, as he always does, that the day after the misbehavior report, he

wrote a "complaint" to Superintendent Artus; Inspector General Roy; and Commissioner Fischer. AC ¶ 249. Plaintiff then makes various claims about the resulting disciplinary hearing, conducted by proposed new defendant Hearing Officer Drown. AC ¶¶ 250-52, 263-300. Within these paragraphs, plaintiff also complains about the employee assistant at the disciplinary hearing, proposed new defendant C.O. Declario. *Id.* As stated above, plaintiff claims that he was found guilty and spent 177 days in SHU as a result. The time plaintiff spent in SHU as a result of this hearing could be sufficient to create a liberty interest.

The court does note that plaintiff also lost good time as a result of this disciplinary hearing. AC ¶¶ 299, 328. Normally, when an inmate loses good time as a result of a disciplinary hearing, and a favorable decision on his due process challenges would necessarily result in the invalidity of that punishment, the court cannot consider a claim for damages on the issue until plaintiff proves that the determination has been reversed on direct appeal, by executive order, by a state tribunal, or by a petition for habeas corpus. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997)(adopting the "favorable termination rule" articulated in *Heck v. Humphrey*, 512 U.S. 477 (1994)). This rule applies even when an inmate is given a "mixed sanction," involving both loss of good time and more restrictive conditions of confinement such as an SHU penalty. *Id.*

However, the Second Circuit has held that an inmate who is given a "mixed sanction" can avoid the "favorable termination" rule of *Heck* and *Balisok* if he ***forever waives*** any consideration of the good time portion of his disciplinary sentence. *Peralta v. Vasquez*, 467 F.3d 98, 104-106 (2d Cir. 2006), *cert. denied*, 551 U.S. 1145 (2007). In this case, plaintiff includes one paragraph in which he states that he does not challenge the loss of good time, and "waives" the issue. AC ¶ 329. Since defendants have not had an opportunity to respond to this claim, and plaintiff was entitled to file his amended complaint, the court will allow this limited issue to proceed after service of the amended

12

complaint on proposed new defendants Drown and Declario.[21]

### C. Time Allowance Committee (TAC)

A review of plaintiff's other new due process claims, however, will result in dismissal of these claims. Plaintiff appears to challenge the findings of the "Time Allowance Committee," (TAC) in 2008, separate from any disciplinary determinations. AC ¶¶ 220-47. Plaintiff seems to allege a variety of deficiencies regarding the TAC's decision to withhold a particular amount of plaintiff's good time, apparently based upon plaintiff's prior disciplinary history. Clearly, a decision of the TAC relates *only* to good time and thus, to the length of plaintiff's incarceration. These claims clearly run afoul of the rule in *Heck v. Humphrey*, and do not fall into the *Peralta* exception for "mixed sanction" cases. Plaintiff has not shown that the TAC decision was invalidated in any way, and thus, this court must dismiss all of plaintiff's claims relating to the TAC decision, including any claims that plaintiff filed "grievances" or "complaints" challenging the decision.

### 5. Retaliation

Any action taken by defendants in retaliation for the exercise of a constitutional right, even if not unconstitutional in itself, states a viable constitutional claim. *Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988). In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)(citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)). The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiffs must set forth non-conclusory

---

[21] The court makes no findings regarding the viability of any of plaintiff's allegations and only finds that the claims could not be dismissed *sua sponte*.

allegations. *Id.* (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other*

*grounds, Swierkiewicz v. Sorema*, *N.A*., 534 U.S. 506 (2002)).

It has been held that "[o]nly retaliatory conduct that would deter a similarly situated individual

of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a

claim of retaliation." *Odom v. Dixion*, 04-CV-889, 2008 U.S. Dist. LEXIS 11748, *62-63 (W.D.N.Y.

Feb. 15, 2008)(quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)).   In *Dawes v. Walker*, 239

F.3d 489, 492-93 (2d Cir. 2001), the Second Circuit recognized that there are situations in which *de*

*minimis retaliation* is "outside the ambit of constitutional protection." *Id.* (citing *Davidson v.*

*Chestnut*, 193 F.3d 144, 150 (2d Cir. 1999)).

Plaintiff's amended complaint is filled with statements that defendants engaged in conduct "in

retaliation."  However, plaintiff's statements are ***completely*** conclusory.  He makes various

statements regarding the enormous numbers of "grievances" and "complaints" that he files and then

states that "in retaliation" other defendants filed misbehavior reports against him.  There is no

explanation of why the misbehavior report is in retaliation for his grievances, other than the existence

of the complaint or grievance.[22]  These claims are the epitome of  "conclusory" allegations that are

"easily fabricated" and may be dismissed.  In one of plaintiff's new paragraphs, he states that "in

retaliation" proposed new defendants Beach, John Doe # 1, and Sergeant Furnia "confiscated" thirty

of plaintiff's outgoing legal letters.  AC ¶ 310.  Once again, plaintiff's claim is completely

conclusory, and he does not appear to be making a separate claim of interference with his mail.

Although in his response to the motion to dismiss, plaintiff argues that the defendants'

conduct would deter a "similarly situated" inmate of "ordinary firmness" from asserting his rights,

---

[22] The court has counted approximately forty-one grievances mentioned in the amended complaint that plaintiff has filed between 2005 and 2008.

14

this court does not agree.  Plaintiff complains about at most nine Tier II hearings and one Tier III

hearing over the course of three years (2005 through 2008).  Two of the Tier II hearings did not result

in *any* confinement and were issued for minor infractions such as failure to maintain a "tidy" cell. AC

¶¶ 154, 163.  Simply by adding the words "in retaliation," to the beginning of a paragraph, plaintiff

cannot turn the issuance of a misbehavior report, a transfer order, or any other conduct into a

constitutional claim.  Thus, all plaintiff's claims of "retaliation" may be dismissed.  Plaintiff's

amended complaint has cured none of the defects in the original complaint regarding claims of

retaliation and instead has simply added more conclusory claims.

**6.      Cruel and Unusual Punishment**

At the end of plaintiff's amended complaint, he states that one of the bases for his action is the

Eighth Amendment prohibition on cruel and unusual punishment. AC ¶ 331.  The Eighth Amendment

prohibits cruel and unusual punishments, including punishments that involve the unnecessary and

wanton infliction of pain. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)(citation omitted).  A

claim alleging that prison conditions are in violation of the Eighth Amendment must satisfy both an

objective and subjective requirement: the conditions complained of must be "sufficiently serious"

from an objective standpoint, and second, the plaintiff must demonstrate the prison officials acted

with a sufficiently culpable state of mind, rising to the level of "deliberate indifference." *Id.* (citing

*inter alia Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

The plaintiff must demonstrate that the conditions result in an "unquestioned and serious

deprivation of basic human needs," and that defendants imposed those conditions with deliberate

indifference. *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996)(citing *Wilson v. Seiter*, 501 U.S. at

297; *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir.

1985)).  The required inquiry with regard to deliberate indifference is whether "the official knows of

and disregards an excessive risk to inmate safety; the official must both be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." *Hathaway, supra* (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Plaintiff clearly does not state an Eighth Amendment claim.  There is no statement of facts

that would indicate that any of plaintiff's disciplinary confinement resulted in the deprivation of basic

human needs, particularly since most of plaintiff's disciplinary sentences involved confinement to his

own cell.  Thus, any Eighth Amendment claim must be dismissed.

**7.      Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment provides that the government

shall treat all similarly situated people alike. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir.

1995)(citation omitted).  Generally, the equal protection clause has been "concerned with

governmental 'classifications that affect some groups of citizens differently than others.'" *Engquist v.

Or. Dep't of Agric.*, 128 S. Ct. 2146, 2152 (2008).  However, an equal protection claim can

sometimes be sustained even if the plaintiff does not allege "class-based" discrimination and instead

claims that he has been irrationally singled out as a "class of one." *Id.* (internal quotations omitted).

To establish an equal protection violation, the plaintiff must show that the defendants applied

a different standard to similarly situated individuals. *Wiggins v. N.Y. City Dep't of Corr.*, 06 Civ.

1946, 2008 U.S. Dist. LEXIS 61262, *21 (S.D.N.Y. Aug. 12, 2008)(citing *Skehan v. Village of

Mamaroneck*, 465 F.3d 96, 111 (2d Cir. 2006)).  Plaintiff must first show that he was treated

differently than others similarly situated because of intentional or purposeful discrimination. *Phillips

v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).  Then, plaintiff must show that the difference in

treatment cannot survive the appropriate level of scrutiny. Id.  In a "class-of-one" claim, the Equal

Protection clause requires a "rational basis for the difference in treatment." *Id.* (citing *Willowbrook v.*

*Olech*, 528 U.S. 562, 564 (2000)).

Although plaintiff claims that he also bases his amended complaint on a violation of "Equal Protection," he has not made any claim that other similarly situated inmates were treated differently than he was.  Thus, any equal protection claim must fail.

### CONCLUSION

This court will deny the defendants motions to dismiss as moot, but will dismiss all of plaintiff's amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim as against all of the served and unserved defendants *except* for the due process claims asserted in paragraphs 248, 251-52, 263-300.[23]  These claims will survive *only* as against defendants Drown and Declario.  The court will order service of the amended complaint on these two new defendants and will order that the defendants file an answer to the plaintiff's due process claims contained in the cited paragraphs.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the defendants' motions to dismiss (Dkt. No. 55, 57, 70) are **DENIED AS MOOT**, and it is

**ORDERED**, that all claims raised in the amended complaint are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim **EXCEPT FOR DUE PROCESS CLAIMS RELATING TO PLAINTIFF'S FEBRUARY 2008 DISCIPLINARY HEARING REFERENCED IN ¶¶ 248, 251-52, 263-300** and **only** as against *new* defendants **DROWN and DECLARIO**, and it is

**ORDERED**, that **ALL OTHER DEFENDANTS ARE DISMISSED FROM THIS**

---

[23] The court also notes that it must be clear that plaintiff is waiving any claim with respect to the loss of good time associated with this disciplinary hearing.

**ACTION** , and it is

ORDERED, that the Clerk shall issue amended summonses for service of the amended

complaint on defendants **DROWN and DECLARIO**, and that these defendants answer or otherwise

move in accordance with the Federal Rules, and it is further

ORDERED, that any of plaintiff's future filings or communications with the court must be

double-spaced and legible.

Dated:September 23, 2009

Thomas J. McAvoy
Senior, U.S. District Judge