UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____
ELVIN LEBRON,

                                    Plaintiff,

          -v.-

                                                                    9:08-CV-508
LT. D. ARMITAGE, *et al.,*                                          (TJM/ATB)

                                    Defendants.
_____

ELVIN LEBRON
95-A-0121
Plaintiff, *pro se*
SHOSHANAH V. BEWLAY, Asst. Attorney General
Attorney for defendants

ANDREW T. BAXTER, United States Magistrate Judge

**REPORT and RECOMMENDATION**

          This matter has been referred to me for Report and Recommendation by the

Honorable Thomas J. McAvoy, Senior, United States District Judge, pursuant to 28

U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

**I.      Background**

          Plaintiff filed a lengthy civil rights complaint and amended complaint, in which

he alleged that defendants violated plaintiff's rights under the First, Eighth, and

Fourteenth Amendments, relative to approximately ten misbehavior reports and

disciplinary hearings between 2005 and 2008. (Dkt. Nos. 1, 58).  Between November

of 2008 and May of 2009, defendants filed three motions to dismiss pursuant to Fed.

R. Civ. P. 12(b)(6). (Dkt. Nos. 55, 57, 70).  On September 23, 2009, Senior Judge

McAvoy issued an Order, dismissing many of plaintiff's claims as well as many of the defendants in this action. (Dkt. No. 77).  Thereafter, plaintiff filed a motion for reconsideration. (Dkt. No. 80).  On March 25, 2010,[1] Senior Judge McAvoy granted plaintiff's motion to the extent that he vacated the dismissal of one of plaintiff's due process claims, but allowed the rest of his September 23, 2009 Order to stand. (Dkt. N0. 102).

On February 4, 2010, I issued a Mandatory Pretrial Scheduling Order, setting a June 4, 2010 deadline for discovery and a September 2, 2010 deadline for dispositive motions. (Dkt. No. 101).  On July 26, 2010, I extended the discovery deadline to September 1, 2010 for the sole purpose of deposing plaintiff. (Dkt. No. 111).  The deadline for plaintiff's deposition was, thereafter, reset to December 31, 2010 due to a problem with plaintiff's attendance at his previously scheduled deposition. (Dkt. No. 114).  Plaintiff was deposed on December 21st. (Dkt. No. 115-3).  On February 25, 2011, defendants filed this presently-pending motion for summary judgment. (Dkt. No. 115).  On April 6, 2011, plaintiff requested, and was granted an extension of time to June 7, 2011 to respond to defendants' summary judgment motion. (Dkt. Nos. 117 & Text Order dtd. 4/8/11).  Plaintiff has not filed a response to the motion.

For the following reasons, this court finds that defendants' motion for summary

---

[1] This case was referred to me on January 4, 2010 after Magistrate Judge Di Bianco's retirement. (Dkt. No. 99).

judgment should be granted, and plaintiff's amended complaint should be dismissed in its entirety.

## II.   <u>Remaining Claims</u>

Defendants have accurately outlined the claims remaining in this action. (Defs.' Mem. of Law at 3-4; Dkt. No. 115-22).  Two due process claims remain against five defendants relating to:

1.   The January 2008 Time Allowance Committee (TAC) Decision, against defendants Steven Racette, the former Deputy Superintendent for Security at Clinton Correctional Facility; Captain James Facteau; and Senior Corrections Counselor, Chris Liberty.

2.   The February 2008 Tier III Disciplinary Hearing Decision, against defendants Curtis Drown, Hearing Officer and Corrections Counselor, David Declario.

Defendants argue for dismissal on various bases, including *res judicata*, collateral estoppel, and on the merits of the due process claims.

## III.   <u>Summary Judgment</u>

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).  Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion.  *Id*.  However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co.,*

3

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmovant bears the burden of proof at trial, the moving party may show that he is entitled to summary judgment by either (1) pointing to evidence that negates the nonmovant's claims or (2) identifying those portions of the nonmovant's evidence that demonstrate the absence of a genuine issue of material fact. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006) (citing *Celotex Corp.*, 477 U.S. at 323). The second method requires the movant to identify evidentiary insufficiency, not merely to deny the opponent's pleadings. *Id*.

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id*. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment." *Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1052 (S.D.N.Y. 1987) (citation omitted). A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [fact finder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether there is a genuine issue of material fact, all factual inferences must be drawn in favor of the

4

nonmoving party. *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (citing *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 742 (2d Cir. 1998)).

In this case, defendants have submitted a substantial number of exhibits, the plaintiff's December 21, 2010 deposition, and a memorandum of law in support of their motion for summary judgment.  (Dkt. No. 115-1 – 115-22).

## IV.  **Due Process**

### A.  **Legal Standards**

To prevail on a procedural due process claim under section 1983, a plaintiff must show that he possessed a protected property or liberty interest, and that he was deprived of that interest without being afforded sufficient procedural safeguards.  *See Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998).  Due process generally requires that a state afford individuals "some kind of hearing" prior to depriving them of a liberty or property interest. *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003).

If the court finds that a liberty interest exists, due process requires advance notice of the charges against the inmate and a written statement of reasons for the disposition. *See Wolff v. McDonnell*, 418 U.S. 539, 563-64, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974).  The inmate should also have the ability to call witnesses and present documentary evidence, subject to legitimate safety and correctional goals of the institution.  *Id.* at 566.  Finally, the inmate is entitled to a fair and impartial hearing officer, and the hearing disposition must be supported by "some" or "a modicum" of

evidence. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (some evidence standard); *McCann v. Coughlin*, 698 F.2d 112, 121–22 (2d Cir. 1983) (fair and impartial hearing officer).

### B.    2008 TAC Decision

#### 1.    Facts

The facts surrounding plaintiff's challenge to the January 24, 2008 TAC recommendation appear at paragraphs 220-47 of his amended complaint. (Dkt. No. 58, ¶¶ 220-47). Plaintiff challenges the TAC decision to recommend withholding 24 months of plaintiff's good time. Plaintiff alleges that defendant Racette, then Deputy Superintendent of Security was present in the room when the TAC met to consider plaintiff's good time award. Plaintiff claims that defendant Racette was in the room, he actually acted as the Chairperson of the Committee, and was involved in making the TAC's decision, which he later affirmed as a reviewing officer. Plaintiff essentially claims that because defendant Racette was present at the TAC hearing, and then affirmed a recommendation in which he participated as a decision-maker, plaintiff was not afforded a "fair and impartial hearing."

Plaintiff adds defendant Captain Facteau as a defendant because he signed the TAC Committee's Report as the Chairman of the TAC, thereby "covering up" for defendant Racette. Plaintiff believes that defendant Liberty also "partook" in the decision as a member of the TAC, lied to protect defendant Racette, and later refused to give plaintiff some information regarding the decision. (Deposition Transcript (Dep.) at 36-40).

Plaintiff later challenged the TAC decision in an Article 78 proceeding,[2] and on September 30, 2009, Acting Supreme Court Justice, S. Peter Feldstein reversed and remanded the TAC decision, finding that the state officials did not meet their burden of showing "through affidavit or documentary evidence, that Deputy Superintendent Racette was not an active, voting member of the TAC as of January 24, 2008." (Defs.' Ex. B at 27).  The court, therefore, found that the TAC determination was not "made in accordance with [state] law . . . ." *Id.*  The court vacated and remanded the TAC decision "for reconsideration." *Id.*

### 2.    Good Time Credits

New York State inmates, who are serving indeterminate sentences with a maximum term, other than life, may receive an allowance for good behavior in prison, not to exceed one-third of the maximum term of imprisonment. N.Y. CORRECT. LAW § 803(1).  Good time credits may be granted for "good behavior" and willing performance of duties or progress and achievement in their assigned programs. *Brown v. Attorney General of NYS*, No. 09-CV-1056, 2011 WL 2447741, *1 (W.D.N.Y. June 15, 2011) (citing N.Y. CORRECT. LAW § 803(1); N.Y. COMP. CODES R. & REGS. tit. 7, § 260.1(c) (NYCRR)).

Once the inmate's good time credits equal the remainder of his sentence, he is conditionally released and placed under parole supervision until the expiration of his

---

[2] The court notes that plaintiff filed his Article 78 proceeding on April 14, 2008. (Defs.' Ex. B; Dkt. No. 115-4).  The plaintiff's state court action challenged a variety of things, including the TAC recommendation at issue here and various disciplinary determinations, including the one that he challenges in this case. *Id.*  Plaintiff signed this federal complaint on May 7, 2008 and it was received by this court on May 12, 2008. (Dkt. No. 1).

sentence. *Id.* (citing N.Y. PENAL LAW § 70.40(1)(b)).  The job of the TAC is to review the plaintiff's accumulated good time credits and any recommendation for loss of credits through misconduct, in conjunction with the inmate's entire record, to arrive at a decision as to the total award of good time credits. *Id.* at *1-2.  TAC recommendations are to be distinguished from the results of disciplinary hearings, in that the TAC recommendation is not punitive. *Id.* at *1 (citing *Matter of Amato v. Ward*, 41 N.Y.2d 469, 473, 393 N.Y.S.2d 934 (1977)).  The TAC does not investigate or punish misconduct, rather; the TAC reviews the inmate's entire record and recommends the number of good time credits to award, measuring the progress, effort, and achievement by the inmate while he was in prison. *Id.*  In New York, TAC determinations are "a privilege, not a right." *Id.* at *2.  Whether to grant or deny them, is the province of prison authorities, and any such decision is not reviewable as long as it is made "in accordance with the law." *Id.* (citing *Matter of Edwards v. Goord*, 26 A.D.2d 659, 660, 808 N.Y.S.2d 841 (3d Dep't 2006); NYCRR, tit. 7, § 260.2).

### 3.   Application

Before plaintiff can assert any due process protections, including a fair and impartial hearing officer, plaintiff must have a "liberty interest" to protect. *Tellier v. Fields*, 280 F.3d at 79-80.  Under *Wolff v. McDonnell*, an inmate has a protected liberty interest in an award of good time credits when the applicable state statutory scheme provides that, once credits are awarded, they can only be revoked under special circumstances. 418 U.S. at 556-58.  It is well-settled that an inmate is entitled to due process protections if a disciplinary hearing officer recommends a denial of

good time credits. *Id.*  However, in *Edwards v. Goord*, 362 Fed. Appx. 195, 197 (2d Cir. 2010), the Second Circuit distinguished the revocation of previously awarded good time credits through disciplinary channels and a TAC recommendation, made in accordance with state regulations.  In *Edwards*, the Second Circuit found that the inmate had no liberty interest in the TAC recommendation. *Id.*  The inmate will have had his due process procedures during the disciplinary hearing that initially resulted in the recommended loss of good time. *Id.*

While it is true in this case, that the state Supreme Court reversed the TAC determination, the court did so based upon an analysis of state law and upon the fact that Deputy Superintendent Racette did not demonstrate "through affidavit or documentary evidence" that he was not an active, voting member of the TAC on January 24, 2008. (Defs.' Ex. B at 27).  Violations of state law or regulations in themselves do not state viable section 1983 claims. *Dixon v. Goord*, 224 F. Supp. 2d 739, 744-45 (S.D.N.Y.  2002). *See Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990)).  In contrast, in this federal action, defendant Racette has submitted a declaration, affirming that, even though he was present at the beginning of the hearing, he left the room, and he was neither a voting member, nor the chairman of the TAC that reviewed plaintiff's good time. (Racette Decl. ¶ 5; Dkt. No. 115-12). Defendant Racette also affirms that he did not "participate in any way in the deliberations of the TAC," so there was nothing preventing him from later confirming the TAC recommendation as the Acting Superintendent of Clinton. (Racette Decl. ¶ 6).

9

Defendant Racette has submitted, as an exhibit to his declaration, the January 2008 TAC recommendation. (Racette Decl. Ex. A; Dkt. No. 113-13).  The document is signed on January 24, 2008 by defendant Facteau as the Committee Chair, on January 25, by defendant Racette as the Superintendent's designee, and on February 1, 2008, by Donald Selsky as the Commissioner's designee, ultimately affirming the TAC determination. *Id.*  The court notes that the total time "tentatively lost" as a result of Tier III disciplinary hearings was three years, and the TAC chose to only withhold two years of good time.  The determination to withhold 24 months of good time was based upon the seriousness of a 2002 incident for which plaintiff was punished after a disciplinary hearing. *Id.*

Defendants have also submitted the declaration of defendant James Facteau, who was the chairman of the 2008 TAC. (Facteau Decl.; Dkt. No. 115-16).  Defendant Facteau affirms that he was the chair of the TAC that reviewed plaintiff's good time credits, and that defendant Racette left the room prior to the deliberations and voting by the TAC. (Facteau Decl. ¶¶ 5-7).  Finally, defendants have submitted plaintiff's disciplinary history, showing that in addition to a serious, violent incident in 2002,[3] plaintiff had a variety of Tier II violations between that time and the 2008 TAC determination. (Racette/Facteau Decls. Ex. B).

At plaintiff's deposition, defense counsel reviewed plaintiff's disciplinary

---

[3] The incident involved assault with a weapon on another inmate. (Dkt. No. 115-6 (disciplinary history) at 2; Depo. at 24-26).  At his deposition, plaintiff testified that he had an altercation with his cell mate. (Depo. at 24).  Although plaintiff insisted at his deposition, that there was no weapon, he was found guilty of a weapon violation in addition to the assault. *Id.* at 24-26.

history with him. (Dep. at 22-26, 27-33).  Plaintiff conceded that the TAC had access

to, and would be entitled to review, his disciplinary history, but plaintiff argued that

the TAC was only allowed to consider Tier III violations, involving serious

misconduct. (Dep. at 33-34).  He reasoned that the TAC could only consider Tier III

misconduct because plaintiff could only lose good time as a result of a Tier III

hearing.  This argument is without merit.  It is clear that the TAC considers all of

plaintiff's behavior, good and bad, including institutional achievements and education,

as well as all disciplinary infractions, not only the results of Tier III hearings. *See*

*Matter of Amato v. Ward*, 41 N.Y.2d at 493 (discussing the function of the TAC).

A review of the plaintiff's disciplinary record shows that since the July 2002

misconduct, plaintiff only had two Tier III misbehavior reports; however, he had ***nine***

Tier II misbehavior reports for which he was found guilty.  Although plaintiff could

not have lost good time as the result of a Tier II hearing, the fact that plaintiff

committed a variety of minor acts of misbehavior, is something that the TAC was

entitled to consider in fulfilling its function to review the plaintiff's "overall" prison

record.  The TAC was entitled to take all of those instances of misbehavior into

consideration when making its decision regarding whether to withhold plaintiff's good

time.

Based upon the case law, this court finds that plaintiff had no liberty interest in

the TAC determination, and thus, there could be no due process violation even if state

regulations were violated.  Additionally, based upon defendant Racette's declaration

and the written report of the TAC, this court finds that even if plaintiff did have a

11

liberty interest in the TAC determination, he has not raised a question of fact, indicating that the fact-finder was biased in any way.  Plaintiff has also failed to show that defendants violated state law by their actions, notwithstanding the Supreme Court's decision, reversing the TAC recommendation and remanding to the TAC for reconsideration.  The state court judge made it clear in his Article 78 decision, that defendant Racette's burden had not been met because there was no affidavit, nor any documentary evidence showing that he did not participate in the decision.  In this case, there are affidavits and documentary evidence, supporting defendants' argument, and plaintiff has failed to respond to the defendants' statements.  Therefore, plaintiff's due process claim, relating to the January 2008 TAC determination, against defendants Racette, Facteau, and Liberty should be dismissed.

### C.   Disciplinary Determination

#### 1.   Facts

Plaintiff also challenges a disciplinary hearing, resulting from an incident on February 13, 2008.  In support of their summary judgment motion, defendants have filed a transcript of the disciplinary hearing, together with all the supporting investigatory documents. (Defs.' Exs. D-3-D-7; Dkt. Nos. 115-7-115-11).  Plaintiff was also asked questions about this disciplinary hearing at his December 21, 2010 deposition.  On February 13, 2008, Corrections Officer Delisle issued plaintiff a misbehavior report, charging him with possession of a weapon. (Defs.' Ex. D-4 at 5). The misbehavior report states that Sergeant Rendle ordered Officer Delisle to search plaintiff's cell. *Id.*  While conducting the search, Officer Delisle found a 9 ½ inch long

and ¾ inch wide piece of metal, sharpened to a point at one end. *Id.*  The weapon was found at the bottom of a bag containing legal mail, inside an envelope. *Id.*

On February 14 and 15, 2008, plaintiff was given the opportunity to choose an inmate assistant. (Defs.' Ex. D-4 at 6; Dkt. No. 115-8).  The "Assistance Selection Form" contains a list of employees who plaintiff could choose as assistants for his hearing. *Id.*  Inmates are told to choose three individuals in order of preference. *Id.* There are two "Assistance Selection" forms in this case, one dated February 14, 2008 and the other, dated February 15, 2008. *Id.* at 6-7).  A comparison of the February 14th and 15th forms shows that none of the individuals chosen by plaintiff on February 14 were available, as indicated on the February 15th form by a line through their names and the notation: "n/a" next to their names. *Id.* at 6-7.  Defendant Declario was plaintiff's third choice on the form dated February 15, 2008. *Id.* at 6.

Defendant Declario has submitted an affidavit in support of the summary judgment motion. (Declario Decl; Dkt. No. 115-19).  Attached to his declaration is a list of things that plaintiff requested of defendant Declario prior to the disciplinary hearing. (Declario Decl. Ex. A).  There are almost two pages filled with requests for a variety of witnesses, documents, and other types of "evidence."  In his declaration, defendant Declario states that he reviewed each request and made a rational decision as to whether the request was relevant. (Declario Decl. ¶¶ 5-7)

Defendant Drown conducted the disciplinary hearing that began on February 21, 2008. (Defs.' Ex. 3 at 7 (hearing transcript); Dkt. No. 115-7).  After defendant Drown read the misbehavior report to plaintiff and took a "not guilty" plea, plaintiff

13

and defendant Drown had a lengthy discussion about the requested "evidence" and plaintiff's problems with defendant Declario's assistance. *Id.* at 3- 9.  Plaintiff complained that defendant Declario did not obtain the evidence that plaintiff wished him to get, nor did he interview the potential witnesses that plaintiff requested. *Id.* According to defendant Drown at the hearing, plaintiff had "eleven claims of faulty assistance." *Id.*

Defendant Drown specifically stated on the record that he considered all of plaintiff's complaints and alleged errors regarding his hearing assistant and ruled that many of the documents requested were "secondary." *Id.* at 18.  Defendant Drown also noted that plaintiff had requested defendant Declario to interview "some 20" inmates on the housing tier, but because the incident in question took place inside plaintiff's cell, it would not "necessarily be inappropriate for an assistant to interview . . . at least some of the inmates who were found on that particular block on that day in question."[4] *Id.* at 19.  Defendant Drown asked plaintiff if he wished to have the same, or another assistant, go back and interview more inmates. *Id.*  Defendant Drown allowed plaintiff to obtain the final Unusual Incident Report, and obtained two more inmate witnesses to testify at the hearing. *Id.*  Defendant Drown also called as witnesses, Sergeant Rendle, who ordered the search and Officers Delisle and Moore, who conducted the search. *See also* Dkt. No. 115-8 at 8-10 (Assistant Forms).

---

[4] The court does note, however, that the hearing documents contain a list of all 47 inmates who were housed on the Tier, with notes by each of the names, indicating whether they were in their cells on February 13, 2008. (Dkt. No. 115-8 at 43-46).  Also next to the inmates names are notes regarding whether the inmate saw anything relating to the search of plaintiff's cell. *Id.*  At the bottom of the first three pages are the names of some of the inmates who agreed to testify. *Id.* at 43-45).

14

The hearing was lengthy, spanning approximately three days of testimony and discussion about plaintiff's requested evidence.[5] (Defs.' Ex. 3 at 1-79).  Plaintiff's theory of the case was that either the corrections officers, or another inmate, had planted the weapon in his cell.  Plaintiff further theorized that the officers could have obtained an old weapon from the evidence locker, planted the weapon in plaintiff's cell to frame him, and then returned the weapon to the evidence locker to be used as evidence against plaintiff.  Defendant Drown allowed plaintiff a great deal of leeway in asking the witnesses questions, including asking the officers whether they had conspired to "set up" plaintiff by planting the weapon themselves or whether plaintiff's cell could have been accessible to other inmates, supporting his theory that an inmate could have planted the weapon in his cell. *Id.* at 42[6], 59-60,[7] 66[8].

Ultimately, plaintiff was excluded from the hearing because of his misbehavior, but even after plaintiff was excluded, defendant Drown continued to ask the witnesses whether there was any evidence that someone else could have planted the weapon. *Id.* at 73 (plaintiff removed), 75 (defendant Drown asks Officer Moore whether anyone approached him to "set-up" plaintiff or whether "somebody had an opportunity to

---

[5] The hearing officer had an extra day's extension so that he could handle some final matters regarding plaintiff's requested witnesses and read the disposition into the record. (T. at 77-79).

[6] Defendant Drown asked Sergeant Rendle whether he had been involved in a conspiracy to set up plaintiff.

[7] There was a discussion during Officer Delisle's testimony regarding whether the officer ever fabricated evidence to frame plaintiff.

[8] Defendant Drown asked Officer Delisle whether the weapon was found in such a position as to indicate that another officer or inmate "hastily" placed the contraband in the legal mail in the bag.

15

plant the weapon.")

Defendant Drown obtained extensions of time to complete the hearing. (Dkt. No. 115-8 at 40-41).  During one of the adjournments of the hearing, defendant Drown went himself to speak with additional witnesses, requested by plaintiff.[9]  At the end of the hearing, defendant Drown stated that he was going to "review the assistant form to satisfy myself and Mr. Lebron, notwithstanding his actions and failure to obey instructions during the hearing . . . [that he was] given an opportunity to respond to the charges contained in the report. (T. 78).  Defendant Drown found plaintiff guilty of the charge and sentenced him to 12 months SHU, 12 months loss of privileges, and 24 months loss of good time. *Id.*

Plaintiff's appeals were all denied at the facility level.  In the same Article 78 proceeding in which he challenged the 2008 TAC decision, he raised some of his due process challenges to this disciplinary determination in addition to challenging other disciplinary determinations made against him.  Much of the 31 page opinion by Supreme Court Justice Feldstein was devoted to denying plaintiff's challenges to this disciplinary determination. (Dkt. No. 115-4 at 8-23).  In his Article 78 proceeding, plaintiff raised the following claims that were specifically addressed by the court: (1) he was improperly excluded from the disciplinary hearing; (2) defendant Drown did not obtain the proper extensions, and the hearing was not completed in a timely

---

[9] Defendant Drown attempted to speak with two individuals who had initially refused to testify in addition to the three inmate witnesses who testified in plaintiff's presence.  Defendant Drown placed this information on the record after plaintiff had been excluded from the hearing for his misbehavior. (T. at 77-78).

manner; and (3) plaintiff was not provided adequate assistance by defendant Declario;

(4) defendant Drown failed to obtain the testimony of two inmate witnesses after the

hearing began; (5) defendant Drown dismissed Sergeant Rendle before he was

finished testifying; (6) certain witnesses improperly testified by speaker telephone; (7)

defendant Drown intimidated one of the inmate witnesses into refusing to testify; (8)

defendant Drown was biased; (9) defendant Drown completed the hearing sheet before

the end of the hearing; (10) defendant Drown considered "unrecorded" testimony in

the hearing decision; (11) plaintiff was not provided with the hearing disposition

sheet; and (12) defendant Drown improperly "altered" the hearing disposition sheet

after the hearing. *Id.*

During plaintiff's deposition in this case, he testified that he purposely did not

raise his claim that the weapon was "planted" in his cell either by corrections officers

or by inmates. (Depo. at 45).  He stated that he only raised "procedural errors" in state

court because he was worried that if the state court denied his "substantive claim," the

denial would be "res judicata" in federal court. *Id.* at 46, 50.

In plaintiff's federal amended complaint, he raises many of the same claims that

he did in state court and includes the claim that defendant Delisle, together with

Officer Moore, and Sergent Rendle lied about receiving information from two

confidential informants that plaintiff had a weapon in his cell. (AC ¶ 248; Dkt. No.

58).  Plaintiff has also raised the challenge to the quality of defendant Declario's

assistance (AC ¶¶ 251, 266-70); plaintiff complains that defendant Declario was

plaintiff's last choice for assistant (AC ¶ 252); and plaintiff claims that both

defendants Declario and Drown failed to properly investigate plaintiff's claim that he was "set-up." (AC ¶¶ 271-72). Plaintiff raised the issues of hearing timeliness (AC ¶¶ 263-65); claimed that certain witnesses inappropriately testified over a speaker phone (AC ¶ 274); and defendant Drown did not personally interview Inmate Payne as to his refusal to testify and did not properly interview Inmate Tafari about his refusal to testify. (AC ¶¶ 273, 277-81).

Plaintiff claims that defendant Drown improperly dismissed Sergeant Rendle as a witness before he finished testifying and denied plaintiff's request to call the two confidential informants as witnesses. (AC ¶¶ 275-76). Plaintiff alleges that no "Refusal to Testify Forms" were signed, that plaintiff was improperly excluded from the hearing, that defendant Drown intimidated Inmate Hynes, and that he improperly completed one form prior to the completion of the hearing. (AC ¶¶ 282-84, 297). Plaintiff also claims that defendant Drown "failed to record all portions of the hearing concerning testimony of others he considered in his statement of evidence relied upon." (AC ¶ 298).

## 2. *Res. Judicata*/Collateral Estoppel

Defendants argue first, that plaintiff's due process claims are barred by the adverse decision in the Article 78 proceeding. (Defs.' Mem. at 13-15). Defendants assert that both collateral estoppel (issue preclusion) and *res judicata* (claim preclusion) apply to bar all of plaintiff's due process claims. Before the court considers the merits of any due process claim, it will analyze the effect of *res judicata* and collateral estoppel on the due process challenges to plaintiff's disciplinary

hearing.

Under the Full Faith and Credit Statute, 28 U.S.C. § 1738, the federal court must afford a prior state court judgment the same preclusive effect that the judgment would be given in the courts of the state in which it was decided. *Giakoumelos v. Coughlin*, 88 F.3d 56, 59 (2d Cir. 1996) (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466 (1982)).  Under New York law, the doctrine of collateral estoppel, (issue preclusion), applies when

> a litigant in a prior proceeding asserts an issue of fact or law in a subsequent proceeding and (1) the issue 'has been necessarily decided in the prior action and is decisive of the present action' and (2) there has been a full and fair opportunity to contest the decision now said to be controlling.

*Id.* (citing *Schwartz v. Public Administrator*, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955 (1969)).  The party asserting issue preclusion bears the burden of showing that the identical issue was decided in the prior proceeding, and the party opposing issue preclusion bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding. *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995) (citation omitted).  In *Giakoumelos v. Coughlin*, the Second Circuit held that collateral estoppel applied in an inmate's subsequent § 1983 action, and "[was] one of the risks" attendant to the plaintiff's decision to challenge the disciplinary determination in an Article 78 proceeding. 88 F.3d at 61.

*Res judicata* or claim preclusion bars the entire action, rather than barring an individual issue, if plaintiff could have raised his claims in the prior proceeding.

*Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  Claim preclusion generally does not bar a section 1983 action after the resolution of an Article 78 proceeding because the full measure of relief available in a 1983 action is not available in an Article 78 proceeding. *See Davis v. Halpern*, 813 F.3d 37, 39 (2d Cir. 1987).  Thus, although plaintiff may bring this action in general, he may not bring individual claims that were necessarily decided in the state court action.[10]

### 3.   Application

Plaintiff testified at his deposition that he brought all of his procedural claims in state court because he did not wish to be precluded from bringing his substantive claim that the weapon was somehow planted in his cell because it would be barred by "*res judicata*." (Depo. at 45-46).  Notwithstanding plaintiff's assertion, a close review of the issues that he raises in this federal action in the Article 78 proceeding shows that he raised all of his federal claims in state court.  He has raised the following claims in both the state court and the federal court:

> (1) plaintiff was unlawfully excluded from the hearing;
> (2) defendant Declario was inadequate in almost every way;
> (3) the hearing did not begin or end in a timely fashion;
> (4) certain witnesses improperly testified by speaker phone;
> (5) defendants Declario and Drown did not investigate or review documents relevant to the misbehavior report being in retaliation for plaintiff filing grievances, nor did they marshal the evidence supporting

---

[10] The court would also point out that, notwithstanding collateral estoppel,  plaintiff would likely be precluded from bringing federal due process claims for state law procedural irregularities in the disciplinary hearing. *See Young v. County of Fulton*, 160 F.3d 899, 902 (2d Cir. 1998) (violation of state law is not the "benchmark" for determining whether a constitutional violation has occurred); Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995) (state law violation does not necessarily rise to the level of a constitutional violation).

plaintiff's claim that the weapon belonged to someone else or was placed there without plaintiff's knowledge;

(6) defendant Drown did not personally interview Inmate Payne and did not properly interview Inmate Tahari about his refusal to testify;

(7) defendant Drown did not record all of the testimony that he considered;

(8) defendant Drown completed one decision form prior to the end of the hearing, and

(9) plaintiff was not given a written statement of the evidence upon which the hearing officer relied in making his disposition.

Each of the above claims was handled in depth by Justice Feldstein in his decision. Justice Feldstein held that plaintiff's own behavior[11] caused him to be "properly excluded from the remainder of the Tier III Superintendent's Hearing," and that plaintiff, therefore, waived his right to challenge any alleged procedural error that happened after plaintiff's removal from the hearing. (Dkt. No. 115-4 at 12-13). With respect to defendant Declario, Justice Feldstein held that even if the assistant should have attempted to locate inmates who had been moved off of the tier, "their lack of direct knowledge of the conduct underlying the charges against the petitioner undermined any claim of prejudice," resulting from the failure to interview them. *Id.* at 14-17. Justice Feldstein noted that the hearing officer appointed a second assistant, who went to interview additional inmates, and three of them agreed to testify, but none of them offered testimony that supported plaintiff's theory that the guards already had a weapon in their hands when they went to search plaintiff's cell. *Id.* at 16. Although

---

[11] Plaintiff insisted upon asking questions about the confidential informants notwithstanding defendant Drown's instructions that plaintiff stop doing so. Justice Feldstein referred to plaintiff's behavior as his "persistent disregard for the hearing officer's determination that no further questions regarding the confidential informant would be entertained . . . ." (Dkt. No. 115-4 at 12).

three additional inmates agreed to testify, none of them offered the testimony that plaintiff desired. *Id.* at 16.

In his decision, Judge Feldstein emphasized that the role of an employee assistant is to interview witnesses and report the results to the inmate, and that the role is "not so open ended as to require the assistant to interview any individual designated by the inmate, no matter how tangential such individual's relationship to the incident underlying the disciplinary charges against the inmate."[12] *Id.* There was no suggestion that any of the other inmates were able to observe the search or the recovery of the weapon. *Id.* at 16-17.

Judge Feldstein then specifically addressed plaintiff's claim that the assistant and hearing officer failed to investigate or review documents relevant to his claim that the weapon was not his or that someone planted the weapon in retaliation for plaintiff's grievance activities. *Id.* at 17-18. Judge Feldstein found that "petitioner's failure to specify in the petition the nature of the documents in question precludes judicial review."[13] *Id.* at 18. Notwithstanding the procedural nature of this ruling, it

---

[12] Even if he court were considering the merits of this claim, under federal constitutional standards, the right to call witnesses is not unlimited. *Alicia v. Howell*, 387 F. Supp. 227, 234 (W.D.N.Y. 2005)(citing *Ponte v. Real*, 471 U.S. 491, 495 (1985)). This right may be limited for security reasons, to keep a hearing within reasonable limits, or on the basis of irrelevance or lack of necessity. *Id.* (citing *inter alia Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991)). Prison officials may be required to explain, to a limited extent, the reasons for the denial of a witness. *Id.* (citing *Ponte*, 471 U.S. at 497). In this case, it was quite clear why the hearing officer did not interview every witness requested by plaintiff.

[13] The court notes that plaintiff had requested the "evidence locker log book page from January 2007 to February 12th, 2008," a year of evidence locker log book pages. (Dkt. No. 115-7 at 8) (Disciplinary Hearing Transcript). Plaintiff requested these documents again at the disciplinary hearing. *Id.* It is unclear whether these were the documents to which plaintiff was referring in the Article 78 proceeding, but it was certainly reasonable for the hearing assistant to refuse to obtain that

was certainly dispositive of the issue raised by plaintiff, necessary to the court's adjudication, and plaintiff had every opportunity to raise the issue. Thus, even the issue of defendants' "failure to investigate" is barred by collateral estoppel.

Without detailing each of Judge Feldstein's rulings, this court finds that all of plaintiff's claims were brought and decided in his Article 78 proceeding. The claims were necessarily decided, and plaintiff had a full and fair opportunity to raise his claims as he wished. During his deposition in this federal action, plaintiff stated that he did not bring his "substantial evidence" claim in state court. (Depo. at 45). The "substantial evidence" claim, apparently is based on plaintiff's theory that he did not "actually" possess a knife. *Id.* The court notes that part of the claim that defendants Declario and Drown failed to properly investigate or review documents, (a claim that plaintiff brought both in state court and now brings in this court), relates to plaintiff's allegation that there were documents that would have shown that the knife was "planted" in plaintiff's cell, either by the officers or by another inmate.

Without engaging in a lengthy analysis of whether this issue would be barred by collateral estoppel, given that the sufficiency of evidence issue is arguably different than a "failure to investigate issue," the court will proceed to an analysis of plaintiff's due process claim against defendant Drown.[14]  In fact, as will be discussed below,

---

many log-book pages, and for the hearing officer to support that decision.

[14] Any sufficiency of evidence issue would be asserted against the hearing officer alone, not against the employee assistant.

23

none of plaintiff's due process claims have any merit at all.[15]

### 3.    Merits

As stated above, in order to comport with due process, the disciplinary determination must be supported by "some," or "a modicum" of evidence, and the inmate is entitled to a fair and impartial hearing officer. *Superintendent v. Hill*, 472 U.S. at 455 (some evidence standard); *McCann v. Coughlin*, 698 F.2d at 121–22 (fair and impartial hearing officer).  In this case, the officers found a knife in plaintiff's cell, in one of plaintiff's draft bags, inside an envelope, that also contained legal papers.  The officers were conducting a search of plaintiff's cell, based upon some confidential information that they received.  Standing alone, this is much more than "some" or "a modicum" of evidence, sufficient to find plaintiff guilty of the misbehavior.

Plaintiff argued very strenuously at the disciplinary hearing that he was "framed" and that either the officers, or another inmate, planted the weapon in plaintiff's cell.  Plaintiff made two different arguments.  His theories were that the officers lied about the confidential information, and planted the weapon because plaintiff filed too many grievances.  Plaintiff also speculated that another inmate placed the weapon in his cell.  This second theory would destroy the "retaliation" theory that he originally asserted.

---

[15] Defendants also argue that plaintiff had no liberty interest in this disciplinary determination because he was only sentenced to seven months of SHU.  (Dkt. No. 115-9 at 1) (modified sentence after administrative appeal).  For purposes of this decision, the court will assume that plaintiff did have a liberty interest because he clearly received more than due process.

Plaintiff argued that if only the employee assistant and/or the hearing officer would have interviewed more inmates or reviewed more documents, this evidence would have revealed the "set up."  A review of the lengthy hearing transcript shows that defendant Drown was more than patient with plaintiff's claims and his requests for evidence.  Plaintiff never specified what documents he wished the officer to "review," and his request for all evidence logs for a year prior to the incident was simply unreasonable.  Defendant Drown indulged plaintiff's request that additional inmates be interviewed, however, none of the three inmates who testified as a result of these additional interviews had any relevant evidence, supporting plaintiff's claims.

There is absolutely no evidence to show that the hearing officer was biased in any way.  In fact, until the plaintiff insisted on disregarding the hearing officer's instructions to stop asking about the confidential informants, the hearing officer attempted to obtain the evidence that plaintiff was seeking and indulge his theory that someone else "planted" the weapon.  There was sufficient evidence to find plaintiff guilty of the misbehavior, and the hearing officer was not biased against plaintiff. Thus, plaintiff received due process, and his final claim may be dismissed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant's motion for summary judgment (Dkt. No. 115) be **GRANTED**, and the amended complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT**

25

**TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE**

**APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 19, 2011

Hon. Andrew T. Baxter
U.S. Magistrate Judge